IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRETHREN MUTUAL INSURANCE CO.,       :
                Plaintiff       :
                                        :
      v.       :       3:CV-06-1961
                                          :       (JUDGE VANASKIE)
ANGELA VELEZ, NELSON VELEZ,       :
THE BLUE MOUNTAIN LAKE CLUB,       :
THE BLUE MOUNTAIN LAKE UTILITIES       :
ASSOCIATION, ASHLEY SAVINON, a       :
Minor, by and through, VICTOR SAVINON   :
her Parent and Guardian,       :
                Defendants       :

MEMORANDUM

      Plaintiff Brethren Mutual Insurance Company ("Brethren Mutual") filed this declaratory

judgment action against Defendants Angela and Nelson Velez ("the Velezes"), Blue Mountain

Lake Club and Blue Mountain Lake Utilities Association ("Blue Mountain Lake"), and Ashley

Savinon, seeking a declaration that it is not obligated to provide indemnity coverage and to

defend the Velezes in an underlying state court action.[1]  Presently before the Court is Brethren

Mutual's Motion for Summary Judgment.  (Dkt. Entry 22.)  Because Brethren Mutual has failed

to tender sufficient evidence demonstrating that the Velezes' late notice of the occurrence of

the underlying accident and subsequent state court action resulted in actual prejudice, Plaintiff's

Motion for Summary Judgment will be denied.

---

[1]This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

I.  BACKGROUND

In May of 2002, a limb from a dead tree located on the Velezes' property in the Blue Mountain Lake Community fell on Ms. Savinon.  (Pl.'s Statement of Material Facts ("SMF"), Dkt. Entry 24, ¶ 9.)   The tree limb struck her in the forehead, causing her to sustain a laceration of her head.  Ms. Savinon was five years old at the time and required plastic surgery to redress the lacerations and scarring that resulted from the accident.  (Pl.'s Ex. A, Dkt. Entry 1-3, at 3.)

On February 1, 2003, Ms. Savinon filed a state court action against Blue Mountain Lake, the homeowners association operating the Blue Mountain Lake planned community.  (Pl.'s SMF, at ¶¶ 3 & 5.)  The Velezes were later served a Joinder Complaint on May 27, 2003, bringing them into the action.[2]  (Defs.' Answer to Pl.'s Statement of Material Facts ("SMF"), Dkt. Entry 27, ¶ 5; Pl.'s Ex. A, at 3.)

At the time of Ms. Savinon's accident, the Velezes maintained a homeowners insurance policy with Brethren Mutual.  (Pl.'s Ex. A, Dkt. Entry 1-3, at 2; Pl.'s SMF, at ¶ 19.)  The insurance policy, in pertinent part, provides:

> In the case of an accident or "occurrence," the "insured" will perform the following duties that apply.  You will help us by seeing that these duties are performed:

---

[2]Brethren Mutual claims they have not been provided with a written copy of this complaint from the Velezes.  (Pl.'s SMF, at ¶ 7.)  The Velezes do not dispute this assertion.  It does appear, however, that Blue Mountain Lake's counsel, via letter dated February 26, 2007, sent Brethren Mutual copies of all the documents from the state court litigation.  (Defs.' Answer to Pl.'s SMF, at ¶ 7; Defs.' Ex. A, Dkt. Entry 27-2, at 1.)

a.  Give written notice to us or our agent as soon as is practical, which sets forth:

(1) The identity of the policy and "insured";
(2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and
(3) Name and addresses of any claimants and witnesses;

b.  Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

c.  At our request, help us:

(1) To make settlement;
(2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";
(3) With the conduct of suits and attend hearings and trials; and
(4) To secure and give any evidence and obtain the attendance of witnesses;

(Ex. B, Dkt. Entry 1-3, at 24.)

On September 21, 2006, some three years and four months after the Velezes were joined in the state court action and over four years after the accident, Marisol Onativia, the Velezes' daughter, telephoned Brethren Mutual to notify it that Ms. Savinon had filed a lawsuit and named the Velezes as defendants.  (Pl.'s Ex. A, Dkt. Entry 1-3, at 2; Dep. James, Dkt. Entry 25-2, at 3.)  Ms. Onativia explained that the Velezes had initially retained their own counsel, but did not have counsel at that time.[3]  (Pl.'s SMF, at ¶ 12.)  No other details about the

_____

[3]According to the report provided to Brethren Mutual on February 26, 2007, William H. Robinson, Esquire, counsel to the Velezes, withdrew from the matter on December 7, 2004.  (Pl.'s Ex. A, at 3.)  The circumstances surrounding the termination of his representation were

litigation were provided.  During the telephone call, Ms. Onativia confirmed that neither she, nor her parents, had reported the accident or state court action to Brethren Mutual before that date. (Pl.'s SMF, at ¶ 14; Dep. James, at 2.)  Trial was scheduled to commence within a few weeks. (Id.)

In a letter dated September 26, 2006, Brethren Mutual advised the Velezes that it would not defend them or pay any judgment entered against them in the state court action.  (Pl.'s Ex. A, Dkt. Entry 1-3, at 2.)  Brethren Mutual explained that the Velezes had not complied with the notice requirements in the insurance policy.  (Id. at 4.)

Defendants' motion to continue the underlying state action was denied.  The parties then agreed to arbitration, causing the Monroe County Court to strike the case from the trial list. (Defs.' Ex. A., at 4-5.) There is no evidence that the state court case has proceeded to trial.

Brethren Mutual filed this declaratory judgment action on October 4, 2006, seeking a determination that it did not have any obligations under the Velezes' homeowners insurance.  It has now moved for summary adjudication.  The motion is fully briefed and ripe for resolution.

II.  DISCUSSION

A.  Summary Judgment Standard

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

---

unknown to Brethren Mutual.  (Id.)

4

material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to nonmoving party. Cont'l Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982). The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 256-57. Merely conclusory allegations taken from the pleadings are insufficient to withstand a motion for summary judgment. Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Summary judgment is to be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

B.  The Two-Prong Brakeman Analysis

The Pennsylvania Supreme Court has rejected a strict construction of notice provisions

in insurance polices, holding "that where an insurance company seeks to be relieved of its

obligations under a liability insurance policy on the ground of late notice, the insurance

company will be required to prove that the notice provision was in fact breached and that the

breach resulted in prejudice to its position." Brakeman v. Potomac Ins. Co., 371 A.2d 193, 198

(Pa. 1977).[4]  "[T]he purpose of the prejudice requirement is to allow an insurer to refuse

payment only if its procedural handicap has led to disadvantageous, substantive results – in

other words, if the insured's violation of its contract has proximately caused its insurer

damages." Trustees of Univ. of Pa v. Lexington Ins. Co., 815 F.2d 890, 898 (3d Cir. 1987).

Subsection (a) of the Brethren Mutual policy requires an insured, in the event of "an

accident or 'occurrence,'" to give written notice to the insurance company "as soon as is

practical." (Ex. B, at 24.)  Subsection (b) requires the insured to "[p]romptly forward [ ] every

_____

[4]The Pennsylvania Supreme Court explained the purpose of notice provisions:

The purpose of a policy provision requiring notice of an accident or loss to be
given within a certain time is to give the insurer an opportunity to acquire,
through an adequate investigation, full information about the circumstances of
the case, on the basis of which, it can proceed to disposition, either through
settlement or defense of the claim . . . .  Such a requirement protects the
insurance company from fraudulent claims, as well as invalid claims made in
good faith, by allowing the insurance company to gain early control of the
proceedings. Since the insurance company has the advantage of a trained
legal and investigatory staff, which is unavailable to the average insured, the
notice requirement normally operates to benefit the insured as well as the
insurance company.

Brakeman v. Potomac Ins. Co., 371 A.2d 193, 197 (Pa. 1977).

notice, demand, summons or other process relating to the accident or 'occurrence'" to Brethren Mutual.  (Id.)

It is undisputed that Defendants did not notify Brethren Mutual of the accident or law suit until September 21, 2006, some three years and four months after the Velezes were joined in the state court action and over four years after the accident.  (Pl.'s SMF, at ¶ 14; Dep. James, at 2.)  Waiting this amount of time to notify Brethren Mutual of the accident and subsequent law suit is unquestionably a breach of these provisions.  See Scottsdale Insurance Co. v. Bieber & Associates, Inc., 105 F. App'x 340, 343 (3d Cir. 2004) (non-precedential); Farmers Nat'l Bank of Ephrata v. Employers Liab. Assurance Corp., 199 A.2d 272, 274 (Pa. 1964) (upholding a trial court's directed verdict that eight months following an accident was not "as soon as practicable.").

Finding a breach-in-fact of the provisions of the insurance policy is not enough.  The insurance company must also show prejudice.  See Brakeman, 371 A.2d at 198.  The stringent standard established in Brakeman – actual prejudice – arises out of concerns of fairness to the insured:

> Allowing an insurance company, which has collected full premiums for coverage, to refuse compensation to an accident victim or insured on the ground of late notice, where it is not shown timely notice would have put the company in a more favorable position, is unduly severe and inequitable. Moreover, we do not think such a result comports with the reasonable expectations of those who purchase insurance policies.

Id. at 198.  Although there is no clear explication of the meaning of prejudice, our Court of

Appeals has observed that there must be "a showing not only of the loss of substantial defense

opportunities but also of a 'likelihood of success' in defending liability or damages if those

opportunities had been available.'"  Trustees of Univ. of Pa, 815 F.2d 898.

Plaintiff maintains that it has been harmed by being notified at such a late stage in the

underlying state court action.  In support of this assertion, Plaintiff enumerates a non-

exhaustive list of thirteen examples of prejudice, asserting that late notice prevented it from:

> (1) assigning a trusted investigator with whom it had established a working
> relationship to obtain information about the claim while such information was
> fresh; (2) timely obtaining and assessing photographs of the premises, tree
> and injuries at issue; (3) timely interviewing the parties and witnesses to the
> incident; (4) conducting settlement negotiations, if appropriate, prior to
> litigation being commenced, when settlement would not have needed to
> include more than four years of counsel fees incurred by the underlying
> Plaintiff's attorneys; (5) assigning experienced counsel of its choosing, with
> whom it had an established working relationship, to preliminarily assess the
> case for settlement and defense; (6) ensuring that the Velez Defendants
> cooperated with the defense of this case; (7) evaluating the pleadings and
> participating in litigation strategy regarding defenses to the claims asserted;
> (8) presenting desired affirmative defenses as to liability; (9) timely obtaining
> medical records regarding the injuries to the minor Plaintiff that may have
> facilitated early settlement; (10) participating in written discovery regarding
> the incident and the underlying Plaintiff's injuries; (11) receiving timely reports
> regarding depositions; (12) participating in all other decisions regarding
> defense strategy and litigation tactics; and (13) receiving ongoing litigation
> analysis and recommendations regarding either settlement or defense of the
> case by its counsel for the more than 4 years in which the underlying case
> has been in litigation completely without its knowledge.

(Pl.'s Br. Supp. Mot Summ. J., Dkt. Entry 23, at 6-7.)

Plaintiff's litany of harm, although impressive, does not show that the probable outcome

8

of this matter has been altered to its disadvantage by reason of untimely notice.  There is no

evidence that the matter could have been settled at an amount lower than could be negotiated

now.  There is no indication of the loss of evidence to the detriment of the defense.  While

Brethren Mutual undoubtedly would prefer to assume control over the defense as soon as

possible, there is no concrete evidence that it has been harmed by the untimely notification

from its insureds.  As our Court of Appeals noted, the "right to 'associate' in the defense of a

claim is too amorphous and cannot itself constitute prejudice, unless [the insurer] can

demonstrate that earlier notice would probably have led to a more advantageous result."[5]

Trustees of the Univ. of Pa., 815 F.2d at 899.

       For example, having a trusted investigator with whom it had established a working

relationship may be an advantage to the insurer, but Plaintiff has not shown that not having its

own trusted investigator resulted in actual prejudice.  Indeed, any injury to Brethren Mutual is

entirely speculative.  Brethren Mutual seeks an inference of prejudice, but at this stage of the

case, inferences are to be drawn in favor of the non-movants.  See Westchester Fire Ins. Co. v.

Treesdale, Inc., No. 2:05cv1523, 2008 WL 1943471, at *16 (W.D. Pa. May 2, 2008) (refusing to

infer prejudice as a matter of law where insurer only showed untimely notice).  In other words, a

---

       [5]In Brooks v. Am. Centennial Ins. Co, 327 F.3d 260, 266 (3d Cir. 2003), the Third Circuit
affirmed a district court's finding of prejudice as a matter of law because "no one had conducted
an independent medical examination of [the insured] or even presented a defense at trial."  327
F.3d at 264.  Here, in contrast, trial has yet to take place and the options of defending at trial
and settlement are available.

generalized claim of prejudice is not enough. See Rite Aid Corp. v. Liberty Mut. Fire Ins. Co.,

414 F. Supp. 2d 508, 519-22 (M.D. Pa. 2005).

Plaintiff's reliance on Metal Bank of America, Inc. v. Ins. Co. of North America, 520 A.2d

493 (Pa. Super. Ct. 1987) is misplaced.  In Metal Bank, the insured participated in negotiations

with the federal and state governments for almost 10 years over an alleged oil spill before

giving notice to the insurer.  Id. at 498.  The negotiations were unsuccessful and the Federal

Environmental Protection Agency (EPA) brought suit for damages in excess of $2,000,000,

which the insured defended with its own counsel for two years.  Negotiations restarted during

litigation and a settlement-in-principle was reached, lacking only the EPA's signature  Id. at 496.

Only then did the insured advise "the insurers that it was having any problems."  Id.

The court pointed to certain factors in support of its finding of prejudice as a matter of

law:  the settlement agreement with the EPA was almost a fait accompli when the insurers were

called upon to provide funds; the complexity of the litigation; the insured sought to join a third

party; at least two supervisory-level employees of the insured had died; a former plant manager

of the insured could not be found; and the president of the insured could not remember the

events of the case.  Id. at 498-500.

In this case, Plaintiff has not proffered evidence that Defendants, or Defendants'

counsel's actions, have actually prejudiced it, as did the insurers in Metal Bank.  The insurers in

Metal Bank pointed to several instances of prejudice – the settlement-in-principle; the additional

party insured's counsel sought to add; the complexity of the investigation, litigation and

negotiations; and the unavailability of witnesses.  Plaintiff has made no such showing in this

case.[6]  In sum, due to the lack of evidence of actual prejudice, this Court simply cannot find

prejudice as a matter of law.  See Rite Aid, 414 F. Supp. 2d at 520-21 (M.D. Pa. 2005) (finding

no actual prejudice and Metal Bank distinguishable because the insurer proffered "no evidence

that [the insured's] delay caused witnesses to be unavailable, evidence to be destroyed, or

otherwise prevented . . ." the insurer from investigating the claim).

III.  CONCLUSION

        For the reasons set forth above, Plaintiff's Motion for Summary Judgment will be denied.

An appropriate order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

---

        [6]Relying on Hyde v. Continental Casualty Co., 969 F. Supp. 289 (E.D. Pa. 1997),
Plaintiff asserts that prejudice resulted in it not having the opportunity to make the "crucial
decisions of when and whether to proceed to trial."  (Pl.'s Reply Br., Dkt. Entry 29, at 11) This
argument is unavailing.  In Hyde, notice was given to the insurer mid-trial.  The result in Hyde
was a liability award of $100,000, and defense costs exceed $1.3 million.  It was thus
appropriate for the court in Hyde to comment that "[t]his is clearly a case in which the insurance
companies, if given an opportunity for early control over the litigation, might have chosen a
different strategy to resolve the case."  Id. at 300-01.  Here, by way of contrast, no such
particularized showing of palpable prejudice has been made.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRETHREN MUTUAL INSURANCE CO.,     :
                    Plaintiff       :
                                    :
    v.                              :        3:CV-06-1961
                                    :        (JUDGE VANASKIE)
ANGELA VELEZ, NELSON VELEZ,         :
THE BLUE MOUNTAIN LAKE CLUB,        :
THE BLUE MOUNTAIN LAKE UTILITIES    :
ASSOCIATION, ASHLEY SAVINON, a      :
Minor, by and through, VICTOR SAVINON :
her Parent and Guardian,            :
                    Defendants      :

## ORDER

NOW, THIS 13th DAY OF JUNE, 2008, for the reasons set forth in the forgoing

memorandum, IT IS HEREBY ORDERED THAT:

1.  Plaintiff's Motion for Summary Judgment (Dkt. Entry 22) is DENIED.

2.  A telephonic status conference shall be held on July 14, 2008 at 11:30 a.m.  Counsel

for Plaintiff is responsible for making the call to (570) 207-5720 and all parties should be ready

to proceed before the undersigned is contacted.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge